FILED
2014 Mar-13 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **BETTY D. PIERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:12-CV-2095-VEH** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM OPINION**[1]

Plaintiff Betty D. Pierson ("Ms. Pierson") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on February 20, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2] Ms. Pierson timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Betty Pierson was 41 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 843). She has completed the twelfth grade. (Tr. 844). She has past relevant work experience as a wire harness assembler, a nurse's assistant, and a general office clerk. (Tr. 861). She claims she became disabled on June 22, 2007, due to symptoms and limitations related to a history of seizure disorder; degenerative disc disease of the lumbar spine; scoliosis; status post fusion and laminectomy of the lumbar spine; carpal tunnel syndrome; degenerative disc disease of the cervical spine; adjustment disorder; depressive disorder; and mental retardation/borderline intellectual functioning. (Tr. 607). She has not engaged in work since June 22, 2007. *Id.*

On July 23, 2007, Ms. Pierson protectively filed a Title II application for a

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

period of disability and DIB. (Tr. 605). She also protectively filed a Title XVI application for SSI on that date. *Id*. On October 16, 2007, the Commissioner initially denied these claims. *Id*. Ms. Pierson timely filed a written request for a hearing on October 29, 2007. *Id*.

The ALJ conducted a hearing on the matter on December 7, 2009. *Id*. On February 3, 2010, the ALJ issued his opinion concluding Ms. Pierson was not disabled and denying her benefits. (Tr. 605-28). On April 6, 2012, the Appeals Council issued a denial of review on her claim. (Tr. 592-95).

Ms. Pierson filed a Complaint with this court on June 6, 2012, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on December 17, 2012. (Doc. 9). Ms. Pierson filed a supporting brief on January 31, 2013 (Doc. 11), and the Commissioner responded with her own on March 4, 2013. (Doc. 12). With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, current through January 24, 2014.

"the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

**FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

After consideration of the entire record, the ALJ made the following findings:

1. Ms. Pierson met the insured status requirements of the Social Security Act through March 31, 1995. (Tr. 607).

2. She had not engaged in substantial gainful activity since June 22, 2007, the alleged disability onset date. *Id.*

3. The claimant has the following severe impairments: history of seizure disorder - stable on medication, degenerative disc disease of the lumbar spine with Levo scoliosis of the Thoracolumbar spine, status post fusion and laminectomy of the lumbar spine, question of moderate left carpal tunnel syndrome, right carpal tunnel syndrome, minimal degenerative disc disease of the cervical spine, adjustment disorder/depressive order, NOS, and borderline intellectual functioning. *Id.*

4. She did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 608).

5. She had the residual functioning capacity ("RFC") to perform a reduced range of light work. (Tr. 609-10).

6. She was unable to perform any past relevant work. (Tr. 626).

7. She was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (Tr. 627).

8. She had at least a high school education and is able to communicate in English. *Id.*

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills. *Id.*

10. Considering her age, education, work experience, and residual functioning capacity, there are jobs that existed in significant numbers in the national economy that she can perform. *Id.*

11. She had not been under a disability, as defined in the Social Security Act, from June 22, 2007 through the date of this decision. (Tr. 628).

**ANALYSIS**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or

[5] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Pierson urges this court to reverse the Commissioner's decision to deny her benefits on the grounds that "the ALJ arbitrarily reject[ed] uncontroverted medical evidence" and "substituted his own opinion for that of both treating and consultative physicians." (Doc. 11 at 8). She also asserts that the ALJ had a duty to recontact the consultative physicians. (Doc. 11 at 9). In its review, this court finds that the ALJ's decision was supported by substantial evidence.

## I. THE ALJ DID NOT SUBSTITUTE HIS OPINION FOR THAT OF THE CONSULTIVE PHYSICIANS' OPINIONS.

### A. It is improper for an ALJ to substitute his opinion for a physician's opinion.

The ALJ cannot substitute his opinion for the opinion of medical or vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 732 (11th Cir. 1992). It is improper for the ALJ to act as a physician. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J. concurring) ("[The ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional."). Cases from this circuit illustrate that an ALJ's substitution of his opinion for a physician's means substitution, not according a different weight to each physician's opinion.

In *Marbury v. Sullivan*, the ALJ did not give proper credit to the diagnoses of two treating physicians. 681 F.2d at 841 (Johnson, J., concurring). The ALJ did not

make any factual findings suggesting that the opinions should be discounted or rejected because of incompetence or any other reason. *Id.* Instead, he rejected the opinions without providing justification and found that the plaintiff was not entitled to benefits for a seizure disorder. *Id.* Concurring, Judge Johnson concluded that the ALJ's actions constituted substituting his own opinion for that of the physicians and were an impermissible use of the ALJ's power. *Id.* ("The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs.").

In *Carlisle v. Barnhart*, the ALJ did not have a sufficient basis for rejecting the opinion of the plaintiff's treating physician and instead substituted his own judgment. 392 F. Supp. 2d 1287, 1294 (N.D. Ala. 2005). Although the ALJ provided reasons for rejecting the opinion, the court found the reasons were not supported by substantial evidence. *Id.* In rejecting the treating physician's opinion without justification, "the ALJ succumbed to the temptation to play doctor and make [his] own independent medical findings." *Id.* at 1295 (citing *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996)) (internal quotations omitted).

In contrast to cases finding the ALJ substituted his medical judgment for that of the physicians, there was ample medical evidence in Ms. Pierson's record from

which the ALJ based his RFC determination. The record contains relevant evidence of evaluations by seven physicians regarding Ms. Pierson's medical conditions and their impact upon her ability to work after the plaintiff's alleged onset date in June 2007. The ALJ ascribed substantial weight to the evidence presented by the plaintiff's treating physician, Dr. Hakim, and a consultive physician, Dr. Majure. In 2007, Dr. Hakim found that the plaintiff was "doing okay," had not had a seizure for nearly two years, and had a normal MRI. (Tr. 613, 715). In 2009, Dr. Hakim found some decreased physical ability and tenderness but that Ms. Pierson had a steady gait and normal muscle tone. (Tr. 616, 775-76). Following the 2009 examination, Dr. Hakim opined that the plaintiff had reduced physical abilities but could still lift up to 20 pounds and walk for an hour at a time. (Tr. 616-17, 778-82). The ALJ appropriately gave substantial weight to Dr. Hakim's opinion because he is board certified in neurology, and his opinion was supported by his own examinations and by the record as a whole. (Tr. 626).

Dr. Majure conducted a consultive psychological exam of Ms. Pierson in August 2009. (Tr. 617-18, 785-91). Dr. Majure found that the plaintiff had some symptoms of stress such as becoming irritable and frustrated, but that other aspects of her mental state were normal. (Tr. 617-18, 785-91). Dr. Majure opined that the plaintiff was able to make decisions and understand and remember instructions. (Tr.

619, 788-90). Dr. Majure reported that Ms. Pierson had mild limitations in interacting with others and undertaking complex instructions and decisions. (Tr. 619, 790). The ALJ gave substantial weight to Dr. Majure's opinion because he is a licensed clinical psychologist and his opinion was supported both by his examination and by the record as a whole. (Tr. 626). The ALJ did not substitute his medical judgment: there was evidence in the record supporting the ALJ's determination that Ms. Pierson was capable of performing a reduced range of light work, and the ALJ specifically noted his reasoning for giving the amount of weight he did to the medical evidence.

**B. An ALJ may discount or reject a physician's testimony when the statement contains inconsistencies or is not supported by the evidence.**[6]

When the evidence supports a conclusion different than a particular physician's opinion, the ALJ may reject it. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983) (citing *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981); *Warncke v. Harris,* 619 F.2d 412, 417 (5th Cir. 1980)) ("[T]he Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion."). The ALJ is required, however, to "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d

[6] The undersigned has rendered a comparable decision from which the framework, analysis, and disposition of this case, in part, persuasively flow. *See Richardson v. Astrue*, No. 2:10-cv-02296-VEH.

278, 279 (1987) (citing *MacGregor v. Bowen*, 976 F.2d 1050, 1053 (11th Cir. 1986)).

The Social Security regulations specifically direct the ALJ to consider the extent to which a medical opinion is consistent with the record; generally, the more consistent an opinion is with the record, the more weight that opinion should be given. 20 C.F.R. § 404.1527(c)(4). The ALJ is permitted to consider various factors when evaluating the weight to be accorded to a medical opinion, including: (1) the existence of an examining relationship, (2) the length, nature, and extent of any treatment relationship, (3) whether the opinion is amply supported, (4) the extent to which the opinion is consistent with the record as a whole, (5) whether the source is a specialist, and (6) the existence of other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Furthermore, the opinion of a claimant's treating source[7] is generally entitled to special weight because such a source is "able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("[T]he testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.").

---

[7] The Regulations provide that "[t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Further, a medical source is not considered a treating source "if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability." *Id.*

As a threshold matter, Dr. Hayden and Dr. Saxon are not considered treating sources because they only examined Ms. Pierson once and their relationship to Ms. Pierson was based "solely on [the] need to obtain a report in support of [her] claim for disability." 20 C.F.R. § 404.1502. As such, their opinions are not automatically entitled to "substantial or considerable weight" as generally required for treating source opinions. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Dr. Hayden saw Ms. Pierson on one occasion for an SSI examination (Tr. 754-57), so he is not a treating physician. During that examination, Dr. Hayden concluded that the claimant was unable to do manual work and was unemployable. (Tr. 756). The ALJ cited inconsistencies as a justification for giving little weight to Dr. Hayden's report. (Tr. 625). As an internal inconsistency, the report stated both that the claimant had lost dexterity in her left hand/couldn't hold a knife and that left hand grip, left arm strength, and left arm tone were all normal. (Tr. 625, 756). As an inconsistency with other parts of the record, the report stated that the claimant could not bend using her back, but Dr. Hakim, the claimant's treating physician, indicated that the claimant could bend forward and touch her toes. (Tr. 625, 756, 776). Additionally, Dr. Hayden's report noted that the claimant was having seizures every several months while Dr. Hakim's notes state she had been seizure free for almost two

years. (Tr. 625, 715, 756). These conflicts in the record were sufficient for the ALJ to discount Dr. Hayden's opinion.

Dr. Saxon saw Ms. Pierson on one occasion on referral from her attorney. (Tr. 799-808). During that examination, Dr. Saxon indicated that the claimant had marked or extreme limitations in all functional areas and that she was not a candidate for employment. (Tr. 799-800, 806-07). The ALJ did not find Dr. Saxon's opinion persuasive because of contradictions between his assessment and the assessments of other treating and consultive physicians. (Tr. 625). Dr. Saxon conducted an MMPI examination[8] and found a cognitive disorder associated with severe memory dysfunction and poor attention and concentration. (Tr. 625, 804). Yet, Dr. Majure, another consultive physician, indicated that the plaintiff appeared sharp with an intact memory, and Dr. Hakim indicated that the plaintiff had unremarkable higher cognitive functioning. (Tr. 625, 775, 786-87). Additionally, while Dr. Saxon estimated that the plaintiff was not a good judge of money, she self-reported that she managed her own finances. (Tr. 625-26, 786, 805). Because of the foregoing inconsistencies with the record, the ALJ discounted Dr. Saxon's opinion.

---

[8] The MMPI is a test of personality and mood functioning. (Tr. 618). Both Dr. Saxon and Dr. Majure administered the test to Ms. Pierson. (Tr. 623). She had a valid administration with Dr. Saxon but not with Dr. Majure (Tr. 623) who noted the plaintiff exhibited "marginal effort."(Tr. 618).

The ALJ's decision to afford little weight to the opinions of one-time examining consultants, Dr. Hayden and Dr. Saxon, was supported by substantial evidence because their opinions were internally inconsistent and inconsistent with Ms. Pierson's medical record which consists of several years worth of extensive treatment records. *See generally* 20 C.F.R. § 404.1527(c)(2) (indicating the importance of the treatment relationship in assigning weight to medical opinions); 20 C.F.R. § 404.1527(c)(4) (noting that opinions that are consistent with the record may be given more weight). Contrary to Ms. Pierson's argument, this was an appropriate exercise of the ALJ's discretion and not an improper substitution of the ALJ's judgment for that of the two consultive physicians. Unlike the cases where the court found a substitution of medical judgment by the ALJ, Ms. Pierson's record provided ample evidence supporting the ALJ's treatment of the medical opinion evidence.[9] The

---

[9] In addition to the opinions of Drs. Hakim and Majure, discussed above, the notes and testimony of three other physicians relating to Ms. Pierson's medical conditions lend support to the ALJ's determination. Dr. Hamo, a treating physician, prescribed medication for the plaintiff's depression in April 2008 but determined she was "better" by September 2008. (Tr. 615, 764-65). Dr. Anderson reviewed the plaintiff's files at the hearing, finding that she would be limited to light work. (Tr. 622-23, 863-64). Dr. Garner also reviewed the plaintiff's files at the hearing, noting her limited treatment for mental illness and lack of a longitudinal history of mental retardation. (Tr. 623, 865-66).

While the ALJ failed to specify the weight given to the opinions of Drs. Hamo, Anderson, and Garner, the failure was harmless error. It is generally reversible error for an ALJ not to state with particularity the weight given different medical opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). "When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's findings, the ALJ's decision will stand." *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008); *accord Chambers v. Astrue*, 7:12-CV-01859-KOB, 2013 WL 5408014, at *13 (N.D. Ala. Sept. 25, 2013). The opinions of Drs.

ALJ merely gave less weight to the opinions of Dr. Hayden and Dr. Saxon, and his decision is supported by substantial evidence.

## **II. THE ALJ WAS NOT OBLIGATED TO CONTACT THE CONSULTING PHYSICIANS FOR ADDITIONAL INFORMATION.**

Ms. Pierson asserts that the ALJ was obligated to recontact Dr. Hayden and Dr. Saxon if he was apprehensive about the scope of their examinations. (Doc. 11 at 9). The ALJ may recontact a physician for additional information if the evidence is insufficient to make a determination.[10] If the ALJ finds inconsistent evidence but is able to weigh the record to determine whether there is a disability, that is permissible and distinguishable from a situation with inadequate information. *See* 20 C.F.R. §§ 416.920b(b), 1520b(b) (2013); *see also Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) ("The Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she

---

Hakim and Majure provided substantial evidence for the ALJ's findings, and the opinions of Drs. Hamo, Anderson, and Garner did not contradict those opinions. The ALJ's discussion of the latter opinions without specifying the weight given was therefore harmless error.

[10] The Social Security Administration changed the language in the C.F.R. regarding this provision in 2012. The change, however, is inconsequential because both the 2010 version and the 2013 version provide for recontacting the physician only when the information is inadequate or insufficient to determine whether the plaintiff is disabled. The 2010 version provides, "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled . . . [w]e will first recontact your treating physician or psychologist or other medical source." 20 C.F.R. § 1512(e) (2010). The 2013 version provides, "if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled . . . [w]e may recontact your treating physician, psychologist, or other medical source." 20 C.F.R. §§ 416.920b(c), 1520b(c) (2013).

will seek additional information or recontact the physician.")

While the evidence provided by the physicians regarding Ms. Pierson's multiple conditions contains diverging conclusions about Ms. Pierson's vocational ability, overall there was substantial evidence supporting the ALJ's determination.[11] The record contains inconsistent information, but not insufficient information, so recontacting the Drs. Hayden and Saxon was not necessary.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this the 13th day of March, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

[11] *See* the discussion above regarding the ALJ's emphasis on the opinions of Drs. Hakim and Majure as well as the consistent testimony of Drs. Hamo, Anderson, and Garner.